E-FILED
Thursday, 23 March, 2017 10:47:43 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BONNIE BAILEY, PEGGY WISE, and JUNE SCHWIERJOHN, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OSF HEALTHCARE SYSTEM, THE SISTERS OF THE THIRD ORDER OF ST. FRANCIS EMPLOYEES PENSION PLAN ADMINISTRATIVE COMMITTEE, THE SAINT ANTHONY'S HEALTH CENTER RETIREMENT COMMITTEE, and JOHN DOES 1–20,<br><br>Defendants. | Case No. 1:16-cv-01137-SLD-TSH |

## ORDER

Before the Court are Plaintiffs' motion for an order designating their present counsel, Kessler Topaz Meltzer & Check, LLP, Izard Kindall and Raabe LLP, and the Janssen Law Center, as interim lead class counsel pending a motion for class certification, ECF No. 17; proposed intervenors Kasandra Anton and Sheilar Smith's ("the *Smith* plaintiffs") motion to intervene, ECF No. 23; their motion to transfer this case to the Southern District of Illinois, ECF No. 25; their motion for leave to file a reply to the responses thereto, ECF No. 33; Defendants' motion for a hearing on the motions to intervene and transfer, ECF No. 34; and Plaintiffs' motion to file a notice of supplemental information, ECF No. 44. For the following reasons, the motion to appoint interim lead counsel is DENIED WITHOUT PREJUDICE, the motion to intervene

1

GRANTED as specified herein, the motion to transfer DENIED, the motion for hearing DENIED, and the motions for leave to file GRANTED.

## BACKGROUND

This lawsuit was filed on May 3, 2016, initially only by Plaintiffs Bailey and Wise. Compl., ECF No. 1. They alleged that Defendant OSF HealthCare System ("OSF") maintains a retirement savings plan ("the plan") for the benefit of its employees, but that this plan is underfunded by at least $350 million. *Id.* at 1–2. Bailey and Wise alleged that this was so because, while OSF claims that the plan falls within the "church plan" exemption to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"), the plan does not fall within the exemption and must be funded at the level ordinarily required by ERISA. *Id.* at 2. Both plaintiffs were or had been employees at OSF's Saint Francis Medical Center ("Saint Francis") in Peoria, Illinois. They purported to sue on behalf of themselves and "[a]ll participants in and beneficiaries of The Sisters of the Third Order of St. Francis Employees Retirement Savings Plan . . . ." *Id.* at 4.

However, OSF operates eleven hospitals, only six of which, including Saint Francis, are located within the Central District of Illinois. *See* Defs.' Resp. Mot. Transfer 3, ECF No. 32. One hospital, Saint Anthony's Medical Center ("Saint Anthony's"), is located in the Southern District of Illinois. *Id.* Six days before Bailey and Wise filed this suit in the Central District, prospective intervenor Smith, a former employee of Saint Anthony's, filed a similar lawsuit in the Southern District alleging much the same thing as to all OSF retirement plans—that OSF is justifying underfunding its retirement plan by treating it as a church plan exempt from the requirements of ERISA. Smith Compl. 2, ECF No. 1; *Smith v. OSF*, No. 3:16-cv-00467-SMY-RJD (S.D. Ill. Apr. 27, 2016) (hereafter "*Smith*"). Smith purported to sue on behalf of "all

participants and beneficiaries of defined benefit pension plans that are established, maintained, administered, and/or sponsored by OSF, OSF's affiliates," or other OSF committees. *Id.* at 1.

Both sets of plaintiffs have since amended their initial complaints, adding plaintiffs. The plaintiffs in this case have added one plaintiff, Schwierjohn, who is a participant in the plan run by Saint Anthony's. Pls.' Mot. Leave File Notice 2.

OSF, a named defendant in both cases and represented by the same counsel in both, moved on June 13, 2016 in the Southern District to transfer *Smith* to the Central District. ECF No. 33; *Smith*. On July 25, 2016, Judge Yandle denied that motion. ECF No. 37; *Smith*. Plaintiffs filed their motion for an order appointing their counsel interim lead counsel on July 19, 2016. The *Smith* plaintiffs then filed their motions to intervene and transfer on August 9, 2016.

## DISCUSSION

### I. The Motion to Intervene

The *Smith* plaintiffs, because they are not parties to this case, must intervene in order to move for the transfer of the case, as they concede. Mem. Supp. Mot. Intervene 1, ECF No. 24. They argue that the court must permit their intervention, pursuant to Federal Rule of Civil Procedure 24(a), because disposition of this case could impair their interest in the outcome of theirs, and because their interests in that disposition may not adequately be protected by Plaintiffs. *Id.* at 8–10. In the alternative, they argue that the Court should permit them to intervene pursuant to Rule 24(b), because their suit shares questions of law and fact with Plaintiffs'. *Id.* at 11. Plaintiffs argue that the *Smith* plaintiffs cannot intervene "of right," but concede that the Court should permit the intervention under Rule 24(b). Pls.' Resp. Mot. Intervene 1; ECF No. 28. Defendants echo the position. Defs.' Resp. Mot. Intervene 1; ECF No. 31.

3

### a. Standard on a Motion to Intervene

Rule 24 provides for two kinds of intervention by a non-party to a suit. "On timely motion, the court *must* permit anyone to intervene who" is supplied such a right by statute, or who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (emphasis added). This kind of intervention is called intervention of right. *Id.* Alternatively, the court "*may* permit anyone to intervene," termed permissive intervention, when someone so moves who is given a conditional right to do so by statute, or who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b) (emphasis added). On a motion for intervention of right under Rule 24(a), the movant bears the burden of showing that the requirements of the rule are met, which the Seventh Circuit has summarized as requiring him to "(1) make a timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk that that interest will be impaired by the action's disposition and (4) demonstrate a lack of adequate representation of the interest by the existing parties." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001). Interventions of right may be subject to "appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24(a)(2) advisory committee's notes to 1966 amendment. On a motion for permissive intervention, the latter three requirements for an intervention of right are dropped, and all that an intervenor need show is that (1) their motion is timely and (2) "the applicant's claim or defense and the main action have a question of law or fact in common." *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009).

### b. Analysis

Plaintiffs and Defendants argue strenuously that the *Smith* plaintiffs should not be permitted an intervention of right under Rule 24(a), but concede that the Court should permit them to intervene under Rule 24(b), without explaining what turns on the distinction. Granting a motion to intervene produces the same result regardless of which section of the rule is taken as authority; the difference between the sections is whether a court must or only may grant the properly supported motion. Perhaps the Plaintiffs and Defendants simply do not want the Court to make a finding that Plaintiffs do not adequately represent the interests of OSF plan beneficiaries—although, as the *Smith* plaintiffs argue, all a 24(a) intervenor need make is a "minimal" showing of possible inadequacy. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972); *see also* Fed. R. Civ. P. 24(a)(2) advisory committee's notes to 1966 amendment (explaining that the standard for a showing of inadequacy of representation is low in order to prevent a potential intervenor in a class action from being rebuffed by the counter-argument that, if present representation is inadequate, res judicata will not operate to foreclose his own suit rights and he is thus not entitled to intervene).

In any event, the parties all agree, as does the Court, that (a) the *Smith* plaintiffs' motion for intervention is timely, coming as it does shortly after the filing of each lawsuit and before the major phases of litigation have begun in either; and (b) that the *Smith* plaintiffs' claims share questions of law and of fact with those of Plaintiffs. Indeed, both sets of plaintiffs appear to wish to certify classes composed of all beneficiaries of any retirement plans that OSF administers, and to do so on the basis of the same legal argument—that OSF has underfunded its plan or plans by improper reliance on the "church exemption." (Helpfully, Plaintiffs have made this overlap even clearer in their Second Amended Complaint, ECF No. 43, specifically alleging that they seek to

sue on behalf of all employee beneficiaries of "the Retirement Plan for Employees of Saint Anthony's Health Center." Second Am. Compl. 5.) The Court permits the *Smith* plaintiffs to intervene, and therefore need not reach the question of whether such an intervention is mandatory.

There is a further complication. The *Smith* plaintiffs seek to intervene "for the limited purpose of seeking to transfer this action to the Southern District of Illinois . . . ." Mem. Supp. Mot. Intervene 1. They do so presumably because, should they be unsuccessful (which, as is explained below, they are) they do not wish to participate actively in this case, but wish instead to pursue their already-pending litigation in the Southern District. Both Plaintiffs and Defendants—the latter of whom, of course, recently moved to transfer the Southern District case here, and then moved again for reconsideration of the denial of that motion—argue that the Court should treat the motion to intervene as a consent to litigate the matter entirely in the Central District. *See* Defs.' Resp. Mot. Intevene 1–2 ("[I]t is reasonable and appropriate that [the *Smith* plaintiffs] should be required to [intervene] as if they were an 'original party' to this action— thereby agreeing to adjudicate those issues in this forum and subject to this Court's jurisdiction."). In essence, Plaintiffs and Defendants argue that, in seeking to intervene only in order to transfer the case to the Southern District, the *Smith* plaintiffs have accomplished by inadvertence what Judge Yandle repeatedly denied Defendants: a transfer, in the other direction, of all the *Smith* plaintiffs' claims to this Court.

An intervention of right may be subject to appropriate conditions and restrictions; all the more so a permissive intervention. The Court can see no reason to penalize the *Smith* plaintiffs for seeking to appear in order to make their argument for transfer, aside from Plaintiffs' and Defendants' obvious desire, which is insufficient. The Court will not enter an order effectively

6

abrogating Judge Yandle's order denying transfer. Instead, the Court grants the *Smith* plaintiffs' motion to intervene for the limited purpose of seeking to transfer the case. Since the Court is denying that motion, there is no need for the *Smith* plaintiffs even to be added to the docket in this case.

## II.     The Motion to Transfer

The *Smith* plaintiffs argue that this case should be transferred to the Southern District because doing so is in the interests of justice, and because it is more convenient for the parties and potential witnesses. Mem. Supp. Mot. Transfer 3–6, ECF No. 26. Plaintiffs respond that (a) having intervened as a plaintiff in this case, the *Smith* plaintiffs cannot seek to transfer venue, because such motions are designed to alleviate hardship on defendants, Pls.' Resp. Mot. Transfer 2–3; and (b) because, while venue is proper in both the Central and Southern Districts, private convenience and the public interest militate against a transfer, *id.* at 4–12. Defendants add that OSF, as an organization, is far more substantially located within the Central District, and thus, all Defendants and the community they serve have a strong interest in having this case adjudicated here. Defs.' Resp. Mot. Transfer 3–4, ECF No. 32.

### a.  Legal Standard on a Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404 permits a transfer to maximize overall utility. Because convenience for some litigants is frequently inconvenient for others, courts considering motions to transfer must engage in a "case-by-case consideration of convenience and fairness" for all parties and potential witnesses. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010)

(quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). District courts are therefore granted "a substantial degree of deference . . . in deciding whether transfer is appropriate." *Research Automation*, 626 F.3d at 977–78.

The analysis is bipartite. The first part focuses on the "availability of and access to witnesses, and each party's access to and distance from resources in each forum," *id.* at 978, the second on factors relating to "the efficient administration of the court system," *id.*, such as docket congestion, relative familiarity with relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy, *id.* In evaluating a motion to transfer venue where a related suit has already been filed in the transferee jurisdiction, the time at which each lawsuit was filed is relevant but not dispositive. *See id.* at 982 ("[W]here a district court faces one of two identical lawsuits and one party moves to transfer to the other forum, the court should do no more than consider the order in which the suits were filed among the factors it evaluates under 28 U.S.C. § 1404(a)."); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987) ("Although a 'first to file' rule would have the virtue of certainty and ease of application . . . the cost—a rule which will encourage an unseemly race to the courthouse and, quite likely, numerous unnecessary suits—is simply too high."). The burden of showing that transfer is warranted lies with the party seeking transfer—typically, a defendant, but here, an intervening plaintiff. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003).

**b. Analysis**

All parties agree that, given OSF's tentacular reach, with hospitals and employees located in both the Central and Southern district, venue is proper in either district. Mem. Supp. Mot. Transfer 3; Pls.' Resp. Mot. Transfer 4–5, ECF No. 29; Defs.' Resp. Mot. Transfer 2.

The *Smith* plaintiffs assert that the convenience of parties and witnesses cuts in neither direction, since the Southern and Central Districts are adjacent to each other, one of the named plaintiffs worked at Saint Anthony's in the Southern District, and employees enrolled in the plans at issue reside in (at least) both the Central and Southern Districts. Mem. Supp. Mot. Transfer 3–4. Plaintiffs respond that the plaintiffs and defendants all live in the Central District and would have to travel a substantial distance, to East St. Louis, were proceedings to be moved there. Pls.' Resp. Mot. Transfer 5. They add that the bulk of OSF's hospitals and employees are located in the Central District, and that thus it is reasonable to assume that more time and money would have to be spent by parties and witnesses to conduct this litigation in the Southern District. *Id.* at 6–8. Defendants add that all potential witnesses thus far disclosed in this litigation live in either the Central or Northern Districts of Illinois, Defs.' Resp. Mot. Transfer 2, and that the Sisters of the Third Order of Saint Francis, who assertedly will be key witnesses, live in East Peoria, in the Central District, *id.* at 2–3. From all the information submitted to the Court regarding the locations of parties and witnesses, it appears that virtually all of the parties and witnesses in the instant case would find it easier, or at least equally burdensome, to travel to the Central District. Thus, the convenience of the parties and witnesses works against transfer of the case to the Southern District.

However, the *Smith* plaintiffs rest most of their argument on the basis of the final portion of the analysis, the interests of justice, which "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

First, the *Smith* plaintiffs note that they filed their lawsuit first. Mem. Supp. Mot. Transfer 4–5. While this is true, they did so by less than a week, and do not identify any reason

9

other than the bare fact of their marginally earlier filing to explain why the timing augurs in favor of transfer. Granting an effective right to determine forum to the first filer amongst many in a putative class action, on the basis of a 6-day difference, without further justification, would indeed encourage "unseemly race[s] to the courthouse." *Tempco Elec. Heater*, 819 F.2d at 750. This Court has no desire to sponsor or referee such contests. The time at which the actions were filed does not work in favor of a transfer.

Second, the *Smith* plaintiffs argue that judicial efficiency would be promoted by the consolidation and joint litigation of both their and the instant case. Mem. Supp. Mot. Transfer at 5–6. In a curious way, the *Smith* plaintiffs repeat their first-to-file argument by claiming that, since Judge Yandle has already rejected Defendants' repeated efforts to have *Smith* transferred to the Central District, and trying all claims against OSF's plans together would be more efficient, the most efficient course is to permit this case to be transferred to the Southern District. *Id.* The argument assumes that once this case was transferred, it would be consolidated; in effect, the *Smith* plaintiffs ask the Court to prospectively approve the consolidation of this case with their case in the Southern district. Indeed, they put the cart so far before the horse as to argue the relatively greater breadth of their claims as compared to Plaintiffs'—arguments that might be relevant to a determination of which firm to appoint as lead counsel, and which case to make the lead case, if and when these cases are consolidated, or on a motion for class certification, but which have little to do with whether venue for the instant action is more appropriate in the Southern District of Illinois. Class certification, rather than a motion to transfer, is the appropriate point in the litigation process for a court to consider the representativeness of proposed class plaintiffs and their claims, and the adequacy of proposed class counsel to litigate

10

those claims.  *See* Fed. R. Civ. P. 23(b); *see also Manual for Complex Litigation, Fourth*, § 21.272 (2004) (describing methods for selecting class counsel).

Of the other factors relating to the efficient administration of the court system, none weigh in favor of transferring the case.  The *Smith* plaintiffs do not argue that the docket in the Southern District is less congested, or that the court there is more familiar with relevant law. While Saint Anthony's is located in the Southern District, as already observed, many more OSF hospitals are located in the Central District, making it desirable to resolve in this district claims that would affect beneficiaries of all OSF employee pension plans.  And, as Defendants argue, OSF has operated primarily in the Central District for "close to 150 years."  Defs.' Resp. Mot. Transfer 3.  An estimated 13,170 class members reside in the Central District, where OSF is one of the largest employers.  *Id.*  In light of these facts, it is desirable and in the public interest that the instant case be resolved where Plaintiffs chose to file it—in the Central District of Illinois. The *Smith* plaintiffs' motion to transfer is neither convenient for parties and witnesses, nor in the interests of justice, and must be denied.

### III.  Motion to Appoint Interim Lead Counsel

Plaintiffs' attorneys—Kessler Topaz Meltzer & Check, LLP, Izard Kindall & Raabe LLP, and The Janssen Law Center—seek an order designating them interim counsel.[1]  Mot. Entry Order 1–4.  Rule 23(g)(3) countenances the appointment of such counsel before a motion to certify a class is made in a class action suit, permitting but not requiring a court to designate class counsel under certain circumstances.

> If the lawyer who filed the suit is likely to be the only lawyer seeking appointment as class counsel, appointing interim class counsel may be unnecessary.  If, however, there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be

---

[1] The first two firms seek designation as co-lead counsel.  The Janssen Law Center seeks designation as "interim liaison class counsel."  Mem. Supp. Mot. Entry Order 1; ECF No. 18.

11

> consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.

*Manual for Complex Litigation*, § 21.11. As the *Manual* explains, appointment of interim lead counsel can help clarify responsibilities amongst attorneys when a number of attorneys are involved in litigation, some but not all of whom may ultimately end up being named class counsel. Here, while there is obviously a duplicative or competing suit in another court, counsel in that case have sought for this case to be transferred and consolidated with their case, not to join this case. Since only the counsel seeking appointment as interim lead counsel are currently involved in this case, there is no need to clarify responsibility *within* this case as to which attorneys bear which responsibilities. Indeed, Plaintiffs' attorneys demonstrate, in their motion and its supporting affidavits, that they have organized litigation responsibilities amongst themselves. Until and unless other parties seek to join the case before the class certification phase, there is no need to appoint interim counsel, whether or not the Rule 23(g) factors are satisfied. A review of similar cases suggests that interim lead counsel is typically appointed only when multiple attorneys seek the role in a single case. *See, e.g.*, *Walker v. Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at *2–4 (N.D. Ill. May 26, 2011) (appointing interim counsel from amongst several competitors).

The motion is therefore denied without prejudice.

## CONCLUSION

Accordingly, Plaintiffs' motion for an order designating interim class counsel, ECF No. 17, is DENIED WITHOUT PREJUDICE; proposed intervenors Kasandra Anton and Sheilar Smith's motion to intervene, ECF No. 23, is GRANTED as specified herein; their motion to

transfer this case to the Southern District of Illinois, ECF No. 25, is DENIED; their motion for leave to file a reply to the responses thereto, ECF No. 33, is GRANTED; Defendants' motion for a hearing on the motions to intervene and transfer, ECF No. 34, is DENIED; and Plaintiffs' motion to file a notice of supplemental information, ECF No. 44, is GRANTED.

Entered this 23rd day of March, 2017.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE